June 1800.

Quynn
vs.
The State

For these reasons, it is contended, this judgment should be reversed.

*Cooke, Mason* and *Harper*, for the defendant in error (a).

*Martin,* (Attorney General,) also for the plaintiff in error(a)

The Court of Appeals, at this term, *reversed* the judgment of the court below.

(a) The Reporters were unable to procure notes of the arguments of these gentlemen.

## COURT OF APPEALS, JUNE TERM, 1800.

### Lamott, et al. vs. Sterett.

*A lessor is entitled to rent of the premises, although during the term the houses, &c. had been destroyed by fire, and notwithstanding the lessor, immediately after the fire, took possession of sundry articles, &c. and entered upon the premises, of which he made various uses.*

*If a sum of money is paid in part of a debt due on bond, &c. carrying interest, before the expiration of the year, such payment is to be deducted from the interest then due, and the residue, if any, from the principal; and the balance thus ascertained, decreed to be paid with interest thereon until paid.*

Appeal from the court of chancery. The case appears to be correctly stated by the counsel.

*Winchester,* for the Appellants. The appellants leased from the appellee a Brewery with its appurtenances, which, during the term, was destroyed by *fire.* The rents were fully paid up to the period of the destruction of the property. An action of *covenant* was brought at law by the appellee, to recover rent arising after the fire, in which action he obtained judgment. The bill in chancery in this case, filed by the present appellants, prayed for relief against that judgment, and by the examination taken, it was fully proved that the appellee, immediately after the fire, took possession of sundry brewing utensils not consumed, and also entered upon the lot, of which he made various uses. These facts were not examinable at law from the nature of the pleadings. The chancellor directed an account to be stated between the parties, in which the right of the appellee to rent, after the destruction of the property, was acknowledged; and the appellants were also charged with interest. That account was confirmed by final decree. The appellants complain of that decree, and humbly insist that it ought to be reversed, and that relief should be granted them against the judgment at law. It is admitted, that an express covenant retains its

obligation at law, notwithstanding the house or thing to which it relates is burnt. *2 Ld. Raym.* 1477. But it is denied that such obligation extends to the full amount of the rent reserved by the covenant even at law, and that under the circumstances of this case, its obligation ceases at law and in equity. By no act of the party, himself covenanting, can his covenant be *destroyed*; yet a man may be discharged from his contract or agreement by the act of God; for when a thing is prescribed to be done, or omitted, if the performance becomes physically impossible, the person obliged shall receive no prejudice, because it would be unreasonable that those things which are inevitable, which no industry can avoid, or policy prevent, should be construed to produce an injury. *10 Mod.* 268. *Noy's Maxims,* 35. And there is no difference in this respect between a *covenant* and an *assumpsit.* *Palmer,* 548. A covenant for payment of rent, runs with the *demised* property; when the tenant is evicted, either by the lessor, or by a title paramount, he is released from his responsibility. When he is prevented from enjoying *the thing* in *respect of which* he entered into the covenant, he is no longer bound by it. Rent is defined to be a certain profit issuing yearly out of *lands and tenements corporeal. Plowd.* 71. 2 *Blk. Com.* 41. When therefore the *tenement* is gone, there is an end of the profits. It is on account of the profits that covenants of this kind are made. When the consideration is gone, the rent fails. 1 *Roll. Ab.* 454, *pl.* 8. From these principles it would appear, that independent of all other circumstances, the appellants ought to have been relieved at law, at least from every thing but nominal damages. Tho' the case in *Raymond* preserves the liability on the express covenant, under circumstances like the present, yet it does not go the length of supporting an obligation to pay the *full* rent. For in *covenant* damages are in the discretion of the jury, and if there be fraud or hardship they may mitigate them in their discretion. *Esp.* 169. *Bull. N. P.* 156. 2 *Wils.* 295. If these authorities, as they clearly do, prove,

that on general principles of law, the case of the ap-pellants has been decided by the harshest rule, and that it ought to have received a different adjudication, it will not be contended that chancery was not, and that this court is not, competent to grant full relief. By a demise of property, the lessor so far parts with the control of it *during the term,* that any entry without the lessee's assent is punishable as a trespass. If the lessor enters, tho' not with such circumstances as amount to an eviction, *yet if his entry interrupts the lessee's enjoyment,* it will destroy the claim for rent during the period of such interruption. If the property demised to the appellants had not been burnt, but the appellee had entered and *removed the stills,* &c. or the other materials for the brewery, there can be no doubt that the rent would have been *suspended.* If the obligation to pay rent remained after the destruction of the brewery, the brewery being the principal consideration for the covenant, the appellants were at least entitled to the use and enjoyment of the unconsumed materials, and to the *possession of the lot.* But the appellee, by his entry and acts, deprived the appellants of that use, enjoyment and *possession,* and therefore it would seem in justice to follow, deprived himself of the rent. *Cowp.* 242. In addition to these authorities, the general principles which govern in a court of equity, support the appellants' case. Rent is the consideration paid for the *use* of demised property. The right of the *thing* remains in and with the lessor. The *use of a thing* may be lessened two ways. It may be lessened, *tho' such thing* continues in the same condition as when hired, or it may be lessened by some damage which makes it worse in itself than it was when hired. All losses in the use of the thing, which are of the first sort, or which happen without any damage to the thing itself, naturally fall on the hirer or lessee. As for instance, if a person rents a house which is well situated *for trade at the time of the lease,* but before the lease expires *the course of trade alters,* in that case the use, or which is the same thing, the value of the use of the house is di-

minished, tho' the house itself receives no intrinsic injury. But where the use is destroyed by the damage or destruction of *the thing to be used*, the loss should naturally fall on the owner of the thing itself; because, since such damage or destruction primarily affects the thing itself, there can be no just reason why he, who is only entitled *to its use*, should be the bearer of the loss occasioned by that damage or destruction. For instance, if a person leases land, which the sea afterwards *washes away*, he cannot be held answerable for the reserved rent. Even *at law*, if a part only was washed away, the rent would be apportioned. 1 *Roll. Ab.* 236. And *a fortiori, in equity*, if the *whole is destroyed*, the whole rent should be discharged. Again, the country in which a man leases land happens to be the seat of war—the enemy seize and hold such land—the lessee, so losing the *use* of the land, is freed from his rent—and so in every case where the use is lost by inevitable accident. But at any rate no interest ought to be charged in this case. *Cas. temp. Talb.* 2. 1 *Cha. Rep.* 97. 2 *P. Wms.* 163. And it having been allowed by the chancellor, his decree, for that reason alone, should be reversed.

*Cooke*, on the same side. It is contended on the part of the appellants, that *the entry and use of the demised premises* by the appellee, barred all further claim for rent. The law is well settled, that the re-entry of the lessor will bar the accruing rent, and upon this part of the case, it is believed by the appellants, that considering the hardship of making them, as lessees, pay for property they could not enjoy, there is sufficient evidence to authorise the application of that rule here. But if the court should think otherwise with respect to the use and occupation of the ground, still *as to the utensils of the brewery*, it is impossible there can be any doubt. These *made as much a part* of the consideration for which the rent was to be paid, as did the buildings. They were expressly *included* in the lease, and it is idle to suppose, that either law or equity would authorise the lessor to sell such utensils, *before the lease was half*

*expired,* and *receive payment* for them, and then to recover rent from the lessees for the same articles for the remainder of the term. If the law is, as we conceive it to be, that the entry and eviction of *part of the demised* premises will bar the recovery of *any part of the rent,* surely here is an entry and an eviction, and sale too, of part of the thing, for the use of which the rent was agreed to be paid, and consequently the subsequent rent was not recoverable. It may be said, that this entry and sale were made with the consent and approbation of the lessees, as the sale was made to themselves; but if the law would have been as we state it, had the sale been to a stranger, we cannot see how the case is altered by its being made to the lessees. The truth is, that at that period neither the lessor nor lessees thought any future rent could be recovered. But is it equitable that the lessor should have a *double compensation* for the same thing; that he should receive the proceeds of the things rented, when sold, and rent for their use, when by the sale he had put a stop to such use? Upon his own principles the rent ought to be apportioned in equity, but by the act of the party it cannot here be done, and therefore it must be lost. See *Cowp.* 242. 1 *Ld. Raym.* 77.

Another subject of controversy is the interest allowed by the chancellor. Interest is allowed as a compensation for damages, and is always in the discretion of the court. Chancery has relieved in cases of civil war; in cases of loss by the act of God; as, by the loss of demised premises, by an earthquake, from loss by fire, &c. but in this case where the *lessor* has had a *beneficial use of the property;* where he has charged rent for the use of the utensils after *he had sold them,* and *had the use of the purchase money*—where the lessees have lost the use of the property by the act of God, to allow interest is unjust, and at war with every principle of equity. But it is still more so to allow interest on interest, as the chancellor has done by his final and last decree. By which decree of the chancellor he states the sum due to be, viz.

1785, Feb. 14.  Due, according to the
Auditor's statement,  £667 19 5
1795, Jan. 14.  Interest for 9 years
and 11 months,  397 8 11

1065 8 4
By Cash,  575 0 0

490 8 4
1796, Nov. 4.  Interest for 1 year 9
months and 21 days,  53 3 9

£543 12 1"

This sum is decreed by the chancellor to be paid by the appellants to the appellee, *with interest thereon until paid*, and costs.  If it be said that this case has been litigated through all the courts, and that all possible delay has been given to the appellants, and therefore the appellee ought to be allowed interest, as the chancellor seems to argue with respect to costs, we answer, the fact is so; but that it has not proceeded from a spirit of litigation, but from an anxiety to obtain justice.  It is sufficiently hard to be compelled to pay for the use of that which has never in fact been used, but doubly hard to pay interest also, which should only be given as compensation by way of damages for the actual use.

*Smith,* on the same side.  The *interest* account, as stated by the auditor, appears to be erroneous.  If a partial payment be made a *year* after the money was due, it can with propriety be applied to the interest, and the balance ought *then* to be struck, because at that time interest was due.  But if such payment should be made *before* the expiration of the year, it ought not to be applied *immediately* to the interest, because there was no interest *then* due, and the balance ought not to be struck until the expiration of the year; at the end of the year the interest upon the principal debt, and the interest upon the money paid from the day of payment, ought to be computed, and

the balance ought *then* to be struck.    Upon the principle of the auditor, the creditor would receive more than six *per cent. per annum;* for if a debtor, having to pay interest of $2000 *per annum,* should, at the end of six months, pay $1000, and that payment should be applied *immediately* to the interest, and the balance should *then* be struck, the creditor would in such case receive, in addition to the six *per cent. per annum,* the interest of the $1000 paid for six months, viz. $30, and the debtor would lose such $30.    If instead of $1000 the debtor should pay only $500 at the end of six months, upon striking the balance *then,* there would be $500 of interest in such balance, upon which interest would thereafter be computed; and thus there would be interest upon interest.    In such a case, the debtor by paying the $500, instead of benefiting, would injure himself; because he would not only deprive himself of the use or interest for six months of the $500 paid, but he would create an additional principal of $500, upon which interest would thereafter accrue; and so *totiis quotiis.*

*Martin,* (Attorney General,) for the appellee(*a*).

THE COURT OF APPEALS, at this term, *affirmed* the decree of the Court of Chancery.

(*a*) Notes of the argument of the Attorney General could not be procured by the Reporters.

## COURT OF APPEALS, JUNE TERM, 1800.

### PEARCE *et al. vs.* WALLACE *and* MUIR.

A bond delivered to a creditor to be collected, and the amount applied to the discharge of so much of the debt due to him, is not to be credited as a payment, unless the money is received; and there is no *laches* on the creditor unless the bond is assigned to him, or he has express directions to proceed to recover the money. The changing of a sterling money debt into currency, at 170 exchange, is equitable and proper. When a sterling money debt is changed into currency, 6 per cent interest is to be allowed. A draft for sterling money is to be credited at the rate of exchange at the time of the draft.

APPEAL from a decree of the court of chancery dismissing the bill.    The bill states, that on the 29th of September 1785, the complainants, (the present appellants) entered into a bond to the defendants, in the penal sum of 5,600*l* sterling money, conditioned for the payment of the balance due to the house of